UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

AMBER C. LONG,                     )
                                   )
            Plaintiff              )
                                   )
        v.                         )   Case No. 2:04 cv 298
                                   )
COPART OF CONNECTICUT, INC.        )
d/b/a COPART AUTO AUCTIONS,        )
                                   )
            Defendant              )

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Copart of Connecticut, Inc., on July 1, 2005.  For the reasons set forth below, the motion is **GRANTED.**

Background

Amber Long began working as a laborer in the Hammond, Indiana yard of Copart, a salvage auto auction company, in March 2000.  (Mike Kroll Aff. ∂3; Ken White Dep. p. 12) After several promotions she became yard manager in August 2001.  (Kroll Aff. ∂4) As manager, Long supervised five employees and disciplined those workers in conjunction with the general manager.  (White Dep. p. 22; Long Dep. p. 17) She also was responsible for inventory and control, security, worker safety, and preparation for weekly car auctions.  (White Dep. p. 22; Long Dep. pp. 17-18, 30-32, 82) The parties do not dispute that Long was a good worker. (White Aff. ∂10; White Dep. p. 37)

In August 2003, Regional Manager Mike Kroll hired Ken White as the general manager of the Hammond yard.  (White Dep. p. 23;

Kroll Dep. 32) When White came to Hammond he was aware that Long had a "little problem asking for help," but he was unaware of any further problems with her as an employee. (White Dep. pp. 32-33) However, during October and November 2003, White began hearing complaints from yard workers regarding Long's use of time and observed her to be spending more and more time in the office rather than the yard. (White Dep. pp. 33-34) According to White, he spoke with Long at least four or five times regarding her work performance and his concerns that the cars were not getting prepared in time, but Long declined White's offers of help and blamed the unpreparedness on the loader operators' failure to do their jobs. (White Dep. pp. 35-37) Although Long acknowledges that cars were not always ready for pre-auction viewing, she claims that the tardiness was due to loaders breaking down or workers calling off and says that White never commented on her performance. (Long Dep. p. 34) She also claims that White never offered to help her. (Long Dep. p. 48)

Around the same time, Copart hired consultant Mike Roan to evaluate and make recommendations on a recent unionizing campaign by yard employees. (White Dep. p. 42; Kroll Aff. ∂6) Through Roan's investigation of the employees' grievances, White learned that the yard laborers felt that Long was exhibiting favoritism towards one laborer, spoke disparagingly to the laborers, directed a loader operator to continue driving his loader even though he felt it was unsafe, and told the laborers not to bring their problems to White because he would not listen. (White Dep.

pp. 37-40, 42; Kroll Dep. pp. 26-27; Kroll Aff. ∂7) Long admits
that she told employees to use machinery that needed to be fixed,
but she claims that she was told to do so by Jim Long who was
responsible for repairs on one of the two loaders.  (Long Dep.
pp. 30-31) She also denies that she told laborers not to go to
White, says that she cursed with, but not at, the laborers, and
says that she was not told about the complaints of favoritism and
disrespectfulness.  (Long Dep. pp. 46-50)

   According to White, the friction between Long and her
subordinates was causing a work slowdown.  (White Dep. p. 39) The
employees also refused to withdraw their petition for a union
while Long remained the yard manager.  (White Dep. p. 44)

   White claims that he spoke with Long about cars not getting
prepared on December 4, 2003.  According to White, when he stated
that Long had not spoken to him in several days, Long responded
that "Well, I've been mad, you know, and if I-if I'm mad and I
have a temper, I might come in here and just throw you out the
window."  At that point, White perceived Long's comments as a
threat and determined that Long should be terminated as a result
of her statements and her performance as a supervisor.  (White
Dep. pp. 47-49) A few minutes after this meeting, White contacted
Kroll to inform him of Long's comments and recommended termina-
tion.  (Kroll Aff. ∂8) Kroll agreed, and on December 5, 2003,
White terminated Long's employment at the direction of Kroll.
(White Dep. p. 45) According to White, he told Long she was fired
because the yard was not running properly.  (White Dep. p. 45)

Kroll also states that Long confirmed to him during her termina-
tion that she made the statements regarding throwing White from
the window.  (Kroll Dep. p. 35)

Long claims that no meeting occurred on December 4, and she
denies that she ever made the threat to White.  (Long Dep. pp.
47-48) According to Long, she returned from a work-related court
hearing on December 5, 2003 to find all of the yard employees,
White, and Kroll involved in a meeting.  Long subsequently met
with White and Kroll for an hour during which they terminated her
"for change."  (Long Dep. pp. 42-43)

On July 26, 2004, Long filed suit against Copart alleging
that Copart discriminated against her because of her gender.  She
bases this allegation on White removing her from another one of
her duties, attending to off-hours alarm calls, because of his
concern that a woman would not be safe traveling to Hammond at
night to investigate an alarm.  (Long Dep. pp. 50-51) She further
claims that White did not talk to her about disciplinary actions
and problems in the yard because of her gender.  (Long Dep. p.
53) According to Long, "I feel that . . . he fired me because I
was a female, not being able to do a man's job in the yard."
(Long Dep. p. 55) *See also* Long Aff. ∂11  She also alleges that
Copart discriminated against her by not letting her make any
decisions in running her yard because she would tell her employ-
ees to do something and then White would instruct the laborers
otherwise.  (Long Dep. pp. 61, 64) In addition to her allegation
of gender discrimination, Long asserts state law claims for

4

breach of contract, wrongful discharge, intentional infliction of
emotions distress, and fraud.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary
judgment is proper only if it is demonstrated that "there is no
genuine issue as to any material fact and the moving party is
entitled to a judgment as a matter of law." *See Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548
(1986); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir.
2004); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004); *Windle
v. City of Marion, Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003),
*cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133
(2003).  The burden is upon the moving party to establish that no
material facts are in genuine dispute, and any doubt as to the
existence of a genuine issue must be resolved against the moving
party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90
S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d
at 841. A fact is material if it is outcome determinative under
applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Lawrence*,
391 F.3d at 841; *Hottenroth v. Village of Slinger*, 388 F.3d 1015,
1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592
(7th Cir. 2003).  Even if the facts are not in dispute, summary
judgment is inappropriate when the information before the court
reveals a good faith dispute as to inferences to be drawn from
those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir.

5

2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d

6

at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027
(stating that a genuine issue is one on which "a reasonable fact
finder could find for the nonmoving party"); *Schuster v. Lucent
Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (stating
that a genuine issue exists and summary judgment is inappropriate
if there is sufficient evidence for a jury to return a verdict
for the nonmoving party).

Beginning first with Long's sex discrimination claim, Title
VII enables a plaintiff to prove discrimination by direct evi-
dence of discriminatory intent, or where no direct evidence
exists, by using the indirect burden-shifting method established
in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05,
93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 688 (1973), and refined in
*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248,
253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981). *See Moser v.
Indiana Department of Corrections*, 406 F.3d 895, 900-01 (7th Cir.
2005). The direct method requires the plaintiff to show through
either direct of circumstantial evidence that the employer's
adverse employment action was impermissibly motivated. *Wilkins
v. Riveredge Hospital*, 130 Fed. Appx. 823, 828 (7th Cir. 2005).
Long seeks to establish a *prima facie* case only through the
*McDonnell Douglas* indirect method.

The most general statement of the *McDonnell Douglas* method
of proof is that the plaintiff has the initial burden of showing
that: 1) she belongs to a protected group; 2) she was performing
to the employer's legitimate expectations; 3) she suffered an

7

adverse employment decision; and 4) the employer treated simi-
larly situated employees who are not in the protected group more
favorably.  *See Moser*, 406 F.3d at 900; *O'Neal v. City of Chi-
cago*, 392 F.3d 909, 911 (7th Cir. 2004); *Williams v. Waste Man-
agement of Illinois, Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004).
This framework is flexible and may be adapted to fit each case.
*Burdine*, 450 U.S. at 253 n.6, 101 S.Ct. at 1094 n.6; *Wohl v.
Spectrum Manufacturing, Inc.*, 94 F.3d 353, 359 (7th Cir. 1996).
Once the plaintiff has met this initial burden, "a presumption of
discrimination arises, and the employer must articulate a legiti-
mate, nondiscriminatory reason for its employment action."
*Moser*, 406 F.3d at 895; *O'Neal*, 392 F.3d at 911.  The defendant's
burden is not one of persuasion, but rather of production and
"can involve no credibility assessment."  *St. Mary's Honor Center
v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d
407 (1993); *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106.  The
burden then shifts back to the plaintiff to prove that the reason
given by the defendant is just a pretext for discrimination.
*Moser*, 406 F.3d at 900-01.

Despite the shifting burden of production, the ultimate
burden of persuasion remains at all times with the plaintiff.
*Moser*, 406 F.3d at 901; *Haywood v. Lucent Technologies, Inc.*, 232
F.3d 524, 531 (7th Cir. 2003); *Stockett v. Muncie Indiana Transit
System*, 221 F.3d 997, 1001 (7th Cir. 2000).  A plaintiff alleging
discrimination, however, has a lesser burden when proceeding on a

summary judgment motion.  In **Anderson v. Baxter Healthcare Corp.**, 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both **McDonnell Douglas** and [**St. Mary's Honor Center v. Hicks**, 509 U.S. 507, 113 S.Ct. at 2747] speak to the burden the plaintiff bears at trial.  However, for summary judgment purposes, the nonmoving party, in this case the plaintiff, has a lesser burden.  He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.
>
> 13 F.3d at 1124 (*quoting* **Shager v. Upjohn**, 913 F.2d 398, 401 (7th Cir. 1994)

*See also* **Plair**, 105 F.3d at 343, 349; **Cliff v. Board of School Commissioners of the City of Indianapolis, Indiana**, 42 F.3d 403, 412 (7th Cir. 1994).

Here, the parties dispute whether Long was performing to Copart's legitimate expectations and whether Copart's proffered reasons for Long's termination was pretextual.  An employer's legitimate expectations are simply "bona fide expectations, for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers." **Coco v. Elmwood Care, Inc.**, 128 F.3d 1177, 1179 (7th Cir. 1997).  The legitimate expectations prong of the *prima facie* case may be considered together with the issue of pretext when the issues are intertwined.  *See* **Jones v. Union Pacific Railroad Company**, 302 F.3d 735, 742 (7th Cir. 2002); **Nwanna v. Ashcroft**, 66 Fed. Appx. 9, 13 (7th Cir. 2002); **Coco**, 128 F.3d at 1179.  Joint considera-

tion is appropriate in this case because Long's alleged failure
to meet legitimate expectations formed the basis of her termination.

Copart proffers two reasons for terminating Long's employ-
ment: (1) Long's threat to throw White out the window which
constituted insubordination; and (2) Long's poor supervisory
record including treating one yard worker preferentially, disre-
specting and swearing at yard workers, ignoring complaints about
safety problems, and telling workers they should not report
issues to White.  Long does not dispute that insubordination is a
legitimate, nondiscriminatory basis for employee termination and
that equal, respectful treatment of subordinates and attention to
safety concerns are legitimate job expectations for a supervisor.
*See* **Moser**, 406 F.3d at 901; **Jones**, 302 F.3d at 742.  Rather, with
respect to the first rationale for terminating her, Long denies
that she ever threatened White or that the conversation on
December 4, 2003 ever occurred.

This denial raises a genuine issue of material fact with
respect to Copart's first reason for terminating Long, particu-
larly given that Long then paradoxically argues in her response
brief that her words "were misconstrued and were actually the
exact converse of the defendant's allegation," thereby suggesting
that some statement actually was made.[1]  However, this question
does not render summary judgment inappropriate, as Long also must
present evidence showing that Copart's second reason for termina-

---

[1] Long fails to include the deposition pages she cites in support of her
argument.  (Pl. Mem Opp. p. 6)

tion was pretextual.  *See **Walker v. Mueller Industries, Inc.**,* 408 F.3d 328, 333 (7th Cir. 2005) (*citing **Hudson v. Chicago Transit Authority**,* 375 F.3d 552, 561 (7th Cir. 2004).

In order to establish pretext, Long "must produce 'significantly probative admissible evidence' from which the trier of fact could infer that the employer's reason was false *and* that the actual reason was discriminatory." ***Jones**,* 302 F.3d at 742-43 (emphasis in original) (citation omitted).  According to the Seventh Circuit, proof that Copart's decision was pretextual

> requires more than showing that the decision was "mistaken, ill considered or foolish [and] so long as [the employer] honestly believes those reasons, pretext has not been shown." ***Jordan v. Summers***, 205 F.3d 337, 343 (7th Cir. 2000).  Pretext "means a dishonest explanation, a lie rather than an oddity or an error." ***Kulumani v. Blue Cross Blue Shield Association***, 224 F.3d 681, 685 (7th Cir. 2000).
>
> ***Ballance v. City of Springfield***, 424 F.3d 614, 617, (7th Cir. 2005)

Thus, "the actual issue is not whether [Copart's] account of events is correct, rather it is whether [Copart] honestly believed" the reports of its employees regarding Long's behavior. ***Jones**,* 302 F.3d at 744 (*citing **Kariotis v. Navistar International Transportation Corporation**,* 131 F.3d 672, 677 (7th Cir. 1997) ("[A]rguing about the accuracy of the employer's assessment is a distraction . . . because the question is not whether the employer's reasons for a decision are *right* but whether the employer's description of its reasons is *honest*.") (quotations omitted).  *See also **Gordon v. United Airlines, Inc.**,* 246 F.3d

878, 889 (7th Cir. 2001) (noting that even if the employer's reasons for discharge were "foolish or trivial or even baseless," summary judgment is inappropriate if the reasons were honestly believed).

White has provided no evidence that Copart's decision to terminate her based on her supervisory record was a lie and that Copart's true motivation was her gender.  First, there is no evidence whatsoever that White's decision to remove Long from alarm response duties had anything to do with her termination or the events leading up to it.  Second, White's instruction to Long on how Long should run her yard, though distasteful to Long, certainly is appropriate considering that White was her immediate supervisor.  Long has not presented any evidence that White's instruction, or his alleged discomfort talking to her, resulted in any discriminatory action.  Her statements that she "felt" her termination was for a discriminatory purpose do not constitute evidentiary support.  *See **Murray v. Chicago Transit Authority**,* 252 F.3d 880, 888 (7th Cir. 2001).  Third, Long admitted that under her management, cars were not always ready for pre-auction viewing and that she directed workers to use broken equipment. (Long Dep. pp. 30-31, 34) While Long blamed these deficiencies on other people, this court will not "sit as a super-personnel department that will second guess an employer's business deci- sion."  **Gordon**, 246 F.3d at 889.  Finally, all of the favorable performance evaluations Long has provided in support of her contention that she was a good supervisor pre-date White and

12

Kroll's discovery of problems related to her management in October 2003. (Pl. Mem Opp. MSJ Exh. J) As such, they are irrelevant to this case. *Moser*, 406 F.3d at 901. For all of these reasons, Long's Title VII claim fails as a matter of law.

Having dismissed the federal claim, this court nevertheless has the discretion to exercise supplemental jurisdiction over Long's state law claims. *See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001). Given the clarity of Indiana law on Long's remaining claims, the court will dispose of them on the merits rather than dismissing them without prejudice.

Long's breach of contract claim and related claims for breach of the implied duty of good faith and fair dealing fail because she was an at-will employee. Long admits that she was an at-will employee that could be terminated for a good reason, a bad reason, or no reason at all and that she had no employment contract. (Long Dep. pp. 77-78) Ignoring this admission, which in itself is sufficient to defeat her contract-based claims, she claims that the Copart Employee Handbook "created a unilateral contract which altered her at-will employment status." (Pl. Brief in Opp. MSJ, p. 7) By arguing that Indiana has not yet decided whether such a handbook can create an employment contract, she ignores clear Indiana Supreme Court precedent to the contrary. *See Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712 (Ind. 1997). *See also, e.g., Mires v. Landolfi*, 908 F.2d 975, 1990 WL 100816, at *1 (7th Cir. July 10, 1990); *Walker v.*

*Rieth-Riley Construction Company*, ___ F.Supp.2d ___, 2005 WL
1799535, at *2 (N.D. Ind. July 25, 2005); *Burke v. Board of
Directors of Monroe County Public Library*, 709 N.E.2d 1036, 1042
(Ind. App. 1999), *vacated in part on other grounds upon rehear-
ing*, 711 N.E.2d 1288 (Ind. App. 1999); *Lavery v. Southlake Center
for Mental Health*, 566 N.E.2d 1055, 1057 (Ind. App. 1991).

*Orr* is squarely on point with this case.  In *Orr*, the
plaintiffs argues that they were wrongfully discharged because
their employer did not follow the progressive disciplinary
procedures set forth in the employee handbook, which they argued
created a unilateral contract.  689 N.E.2d at 915-16.  The
Indiana Supreme Court flatly rejected the plaintiff's contract
theory holding:

> We decline to construe the employee handbook
> as a valid unilateral contract or to abolish
> the rules which generally requires the em-
> ployee to provide adequate independent con-
> sideration to convert an employment at will
> relationship into a relationship that the
> employer can terminate only for good cause.

689 N.E.2d at 714

While declining to use the facts of *Orr* to determine whether
an employee handbook could *ever* modify an at-will employment
relationship under *any* circumstances, the court found that the
handbook at issue failed to do so.  *Orr*, 689 N.E.2d at 720-21.
Specifically, the court found that the handbook did not create a
contract because it could not "be said to contain a 'clear
promise' which plaintiffs could reasonably believe constitutes an
'offer.'" *Orr*, 689 N.E.2d at 720-21.  Critically, the handbook

14

lacked a statement that employees would be discharged only for just or good cause, expressly stated that dismissal could occur immediately and without warning even though most discipline would be progressive, and stated that the list of actions warranting discipline was not all-inclusive. *Orr*, 689 N.E.2d at 721. Moreover, the handbook contained a disclaimer "which [was] placed towards the front of the Handbook and which clearly [stated] that its terms could be changed at any time." *Orr*, 689 N.E.2d at 721. According to the *Orr* court, "an employee handbook bearing or accompanied by such disclaimers, particularly when the employee signs one of the disclaimers, generally, as a matter of law, does not crate a unilateral contract." *Orr*, 689 N.E.2d at 721.

The Copart Employee Handbook, which Long admits to signing, contains a bolded notice that "your employment is at will, and you and the Company have the right to terminate your employment for any legal reason or no reason, or notice to each other." (Handbook, p. 9; Long Dep. p. 77) The Company Rules section provides a nonexhaustive list of violations for which progressive discipline "may" be given "at management's discretion." (Handbook, p. 7.1) It further states that "[t]he type of discipline will depend on the severity of the violation and the specific facts and circumstances of the conduct." (Handbook, p. 7.2) Finally, the Handbook states that Copart has "no standard series of disciplinary steps the company must follow. In certain circumstances, your conduct may lead to immediate discharge" and then reiterates the at-will employment relationship. (Handbook,

p. 7.2) There is negligible difference between this handbook and
the handbook in *Orr*, and so Long's contract-based claims fail as
a matter of law.

Long's wrongful discharge claim is equally meritless.
Indiana has a strong presumption in favor of the at-will employ-
ment status.  *Orr*, 689 N.E.2d at 717-18.  Only three exceptions
allow a plaintiff to rebut the presumption: (1) "if an employee
establishes that 'adequate independent consideration' supports
the employment contract," (2) where a "clear statutory expression
of a right or duty is contravened," and (3) "in certain circum-
stances . . . promissory estoppel."  *Orr*, 689 N.E.2d at 717-18.
Long argues that she has met the second two exceptions.

Long's argument that she relied on a promise of progressive
discipline, and that therefore Copart was estopped from treating
her as an at-will employee, must be rejected outright.  According
to the Seventh Circuit,

> [a] disclaimer that is effective against a
> claim of breach of contract is also effective
> . . . against a claim of promissory estoppel.
> The function of the doctrine of promissory
> estoppel is to provide an alternative basis
> to consideration for making promises legally
> enforceable.  A promise can be legally bind-
> ing because it is supported by consideration
> or because it induces reasonable reliance,
> but in either case the promisor is free by a
> suitable disclaimer to deny any legally bind-
> ing effect to the promise.  To put this dif-
> ferently, consideration or reliance is a
> necessary but not a sufficient condition of
> the enforceability of a promise.  Another
> necessary condition is that the promise be
> worded consistently with its being intended
> to be enforceable. (citations omitted)

16

> *Workman v. United Parcel Service, Inc.*, 234
> F.3d 998, 1001 (7th Cir. 2000); *Accord* **Orr**,
> 689 N.E.2d at 718

Therefore, a handbook disclaimer of the employee's at-will status effectively negates the possibility of clear promissory language necessary to a claim for promissory estoppel as well as for breach of contract.  *See* **Workman**, 234 F.3d at 1001-02.

Long's fraud claim fails for the same reason.  Fraud requires a "material misrepresentation of a past or existing fact made with knowledge of or reckless disregard for the falsity of the statement to the detrimental reliance of a third party."  *Munsell v. Hambright*, 776 N.E.2d 1272, 1281 (Ind. App. 2002), *trans. denied*, 792 N.E.2d 39 (Ind. 2003).  Long alleges that Copart had a "policy with regard to termination [that] required a reason for termination and several warnings prior to the actual termination."  (Pl. Mem. Opp. MSJ, p. 12) As discussed at length above, Copart's employee handbook explicitly declined to make such a representation.  In any event, "actual fraud may not be predicated upon representations of future conduct."  *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. App. 2004).  Thus, Long's fraud claim is legally unsupportable even if she could show that Copart had an absolute, unwritten policy of progressive discipline prior to termination.

Long's theory that she establishes the public policy exception because she has a statutory right to be free from gender discrimination also misconstrues the applicable law.  The public policy exception applies only when "an employee is discharged

17

solely for exercising a statutorily conferred right." *Purdy v. Wright Tree Service*, 835 N.E.2d 209, 219 (Ind. App. 2005).  The Indiana Supreme court has recognized this exception in two narrow instances: when an employee claims she was discharged for filing a worker's compensation claim or for refusing to violate a law for which she could be held personally liable.  *See McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 393 (Ind. 1988) (violation of a law); *Frampton v. Central Indiana Gas Company*, 297 N.E.2d 425, 428 (Ind. 1973) (worker's compensation).  *See also Orr*, 689 N.E.2d at 718.  Because this case does not fit within either of these exceptions – and in any event Long has produced no evidence she was discharged solely for exercising a statutory right – Long's public policy argument fails.

The public policy exception further does not apply here because it only is available when the statute on which the policy is based provides no remedy.  *See Groce v. Eli Lilly & company*, 193 F.3d 496, 502-03 (7th Cir. 1999); *Boyer v. Canterbury School, Inc.*, ___ F.Supp.2d ___, 2005 WL 2370232, at *4-5 (N.D. Ind. Sept. 27, 2005); *Patterson v. Toyota Motor Manufacturing, Indiana, Inc.*, ___ F.Supp.2d ___, 2005 WL 1355479, at *1 (S.D. Ind. June 6, 2005).  Title VII authorizes numerous remedies including compensatory damages, punitive damages, and injunctive relief. 42 U.S.C. ßß1981a, 20003-5(g).  For this reason as well, Long's public policy argument fails.

Long further argues that Copart's actions constitute intentional infliction of emotional distress.  Intentional infliction

18

of emotional distress occurs when "one who by extreme and outra-
geous conduct intentionally or recklessly causes severe emotional
distress to another." ***AutoXchange.com, Inc. v. Dreyer and
Reinbold, Inc.***, 816 N.E.2d 40, 52 (Ind. App. 2004) (*quoting
**Cullison v. Medley***, 570 N.E.2d 27, 31 (Ind. 1991)).  According to
***AutoXchange.com***, "[h]owever, the burden of proof is high and
liability has been found only where the conduct has been so
outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized society."  816
N.E.2d at 52.  As a matter of law, Long has failed to meet this
burden.

Long's claim is without merit both legally and factually.
First, Long states that Copart intentionally inflicted emotional
distress by terminating her without cause while she was perform-
ing to expectations.  As determined above, Long failed to estab-
lish that she was meeting Copart's legitimate expectations for
yard manager.  In addition, her termination occurred in private,
with only herself, White, and Kroll present.  (Long Dep. pp. 42-
44) According to Long, Kroll did not say much during the termina-
tion.  (Long Dep. p. 56) Long characterized White as "a little
hostile, a little loud, red-faced, as he would when he gets a
little upset."  (Long Dep. p. 44) Even if true, neither has Long
shown that she experienced severe emotional distress as a result
of the manner in which she was terminated nor could White's

19

alleged demeanor - "a little" upset and loud - be characterized as outrageous or extreme.

Next, she says that White engaged in "harassing behavior" including undermining Long's authority as yard manager by directing the workers in a manner that conflicted with Long's instructions, allowing workers to mistreat Long and failing to discipline them at Long's request and failing to repair equipment after Long requested.  (Pl. Mem. Opp. MSJ, pp. 11-12) As already stated, White was the general manager of the Hammond yard and Long's immediate supervisor.  As such, he had every right to dictate the manner in which yard work was completed.  The fact that he might do so is neither unreasonable nor indecent. Additionally, Long has produced no evidence that White allowed workers to mistreat her or failed to discipline them at her request.  The only incident Long could recall actually resulted in the employee receiving a warning for cursing at Long.  (Long Dep. pp. 61-63) Finally, Long only testified that Kroll would tell her to get equipment fixed and she did not mention any direct instructions from White.  (Long Dep. p. 33) Aside from the lack of evidentiary support for this allegation, the court notes that a company's decision to utilize semi-functional equipment is not outrageous in this instance, nor has Long produced any evidence that she suffered severe emotional harm as a result.

20

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, Copart of Connecticut, on July 1, 2005 is **GRANTED.**

ENTERED this 16th day of November, 2005

                                        s/ ANDREW P. RODOVICH
                                           United States Magistrate Judge

21